There is a big unanswered question looming over this appeal, and that is whether a native of Iraq, Mr. Alazzawe, can claim asylum from Germany, a nation in which he resided for some 17 years before coming to the United States. On that central question, the Board's view is all but impossible to decipher. In dismissing Mr. Alazzawe's original appeal, the Board seemed to have assumed that Mr. Alazzawe could seek asylum from Germany, but it ultimately concluded that he had failed to establish a well-founded fear of persecution in that country. Counsel, is it your view that your client could seek asylum from Germany? Most definitely, Your Honor. Now, Counsel, in the statutory scheme, what language in the asylum statutes and regulations would you be relying upon to assert your position that your client could seek asylum from Germany? Before I talk about the statute, Your Honor, I do want to say there are only two circuit court cases that have addressed this question squarely. And neither of which really analyze the statute. They don't analyze the statute, but both come out in favor of the ALA. Most recently, the case decided last week that we submit it to the court with our 28-J lawyer. I read that, but there wasn't any analysis as to why that was appropriate. So that's why I'm asking you, what language in the statute or regulations would support that argument? Because the statutory scheme seems to anticipate seeking asylum from one's native country. Well, what the definition of refugee says in 101A42 of the Act, your refugee, if you are a person who is outside your country of nationality, or in the case of a person having no nationality, is outside any country in which that person last officially resided and is unable or unwilling to return because of persecution or welfare. Now, applying that to the circumstances of your client's case, how does that fit? The critical thing is how do we define national? And it's defined in the Act, this is in Section 101A21 of the Act, as a person owing permanent allegiance to a state. Now the question here is, well, is Mr. Alazawi somebody who still owes permanent allegiance to Iraq? He obviously is not. I mean, this is a man who fled Iraq after having been arrested and brutalized, detained for four months, suspended from the ceiling, had his fingernails and toenails ripped out. Well, on that theory, anybody who flees a country because he receives persecution becomes a stateless person. And certainly that's not what this statute says, is it? On your theory, as long as you say, well, I would be persecuted in my home country, I become stateless. In theory, one could say that. That's not the position we're taking. Well, that's what you're saying. You're saying because they did such nasty things to him in Iraq, he left Iraq. I think it's both a legal question and a factual question. In this particular case, we have a situation where the man has not returned home for some 32 years. He fled, it's true, after having been brutalized by the Iraqi government. And when he left, and this is laid out on page 46 of the administrative record, he vowed never to return. It's difficult to conceive or it's difficult to suggest that this is a man who owes permanent allegiance to Iraq when he was treated this way by his own government, fled some 32 years ago and vowed never to return. But the critical point here, Your Honor, is that this is a question that the board has not addressed. And because the board has not addressed the question, it's really inappropriate for this court to decide it in the first instance. As I was saying, in- But the board essentially did. No, Your Honor, actually it did not. In dismissing Mr. Al-Azawi's appeal, the original appeal, it seemed to assume, for purposes of argument, that he could apply for asylum from Germany. Let me- There's one preliminary question here that I found interesting, which is, do you challenge or contest the board's determination that he had permanently resettled in Germany? Before this court, we really have not. I mean, I think that it's- I would prefer that the court not really rule on that question or address it, because I think this case has to go back to the board for a ruling on the issue of whether he can apply for asylum from Germany. And the outcome- If he's permanently resettled, why doesn't that bar him from seeking asylum under the statutory scheme? It doesn't bar him under the statutory scheme, Your Honor, if he is an individual who has no nationality, and that's the position that we're taking. Because then he can seek asylum from the country in which he last habitually resided, and that would be Germany. And he'd only be barred under the firm of settlement provision. So you're claiming that he's stateless, in essence? I'm claiming that, under the statute, he is one who has no nationality, because, in essence, the Iraqi government has- Was that argument made to the BIA? Pardon me, Your Honor? Was that argument made to the BIA? At the BIA, this wasn't argued in detail, Your Honor. Basically, the motion to reopen argued that he had a well-founded fear of returning to Germany, and that he was eligible for asylum on that basis. Was it argued that he had no state, that he was stateless, he was not a citizen of Iraq? Not specifically, no. But clearly- Well, then why would we send it back to the BIA to consider an issue that wasn't raised? Because it was raised, Your Honor. It just wasn't raised as explicitly as that. The issue was raised because he argued that, in fact, he was eligible for asylum from Germany. And why would we send it back to the BIA when it already has expressly said, quote, We do not find he's established he was persecuted or has a well-founded fear of persecution in Germany. Yeah, that's- That sounds to me an awful lot like the ruling that one would make if you were considering asylum. Yeah, it does, obviously. And that's in dismissing his appeal, Your Honor. That's not the decision on the motion to reopen. That's the original decision dismissing his appeal. That's not the decision on the motion to reopen. I'm not talking- I'm talking about the appeal, yeah. Yeah, and I understand that. And our- our more- Excuse me? I understand that, Your Honor, that they found that he has no well-founded fear in dismissing his original appeal. As far as the motion to reopen is concerned, what facts that didn't exist before existed at the time of the motion to reopen? Well, on that point, Your Honor, the petitioner presented a number of articles regarding the existence of Iraqi spies in Germany. And this is important, because when the board- None of which existed at the time the board ruled, I take it? Actually, no, Your Honor. There was no evidence- None of the information existed at the time the board ruled. Is that correct? That's an assumption, Your Honor. There's no evidence- that's an assumption that you're making, Your Honor. That's actually- there's no evidence to support that assumption. I didn't- I didn't- I'm not making an assumption. I said, is that the case? There is- there was no evidence, no documentary evidence to support this prior to, I think, about 1999. The evidence that we submitted, Your Honor, in the motion to reopen, is all dated after Mr. Al-Azawi's hearing before the immigration judge. But more important than that, the content of those news articles makes clear that the German government, at least in the higher levels, did not discover the widespread nature of this Iraqi intelligence- about 1999. And this is laid out in these news articles on pages 78 and 80. They didn't make any arrests of any Iraqi nationals engaged in this espionage and harassment until the year 2001. So it just- it wasn't- this documentation wasn't available. And it clearly is new evidence, and as a result, we meet the requirement under the- Excuse me. You said it wasn't available at the time the board ruled in 2002? That's not the test, Your Honor. The test is whether it was available at the time of the immigration judge hearing. I thought one could present new evidence to the BIA in accordance with Ninth Circuit law. In some situations, you can, Your Honor. But the regulations here, if you look at 8 CFR Section 1003.2, that's the regulation that governs motions to reopen. And it simply requires a showing that the evidence was unavailable at the time of the original hearing. So the test here is whether this evidence could have been presented in 1998, when Mr. Al-Azawi had his hearing before the immigration judge. Before you sit down, let me just ask you, practically speaking, I'm curious. He can't be sent back to Iraq, as I understand it. At this time. At this time. And if the government tries to send him to Germany, he doesn't have travel papers right now, correct? The Germans won't take him. That's true. So he's going to remain here in this country? Until the government... At what point could the government then begin to remove him from the country? When they think it's appropriate to remove him to Iraq. When they believe that it's no longer more probable than not that he'll be persecuted in Iraq. At that time, they could remove him to Iraq, unless he has a grant of asylum. The difference between withholding and asylum is a huge one, because with asylum, you're here for good, basically, unless you do something that makes you deportable. With withholding, you're here only until the government decides that it's no longer more probable than not that you'll be persecuted in Iraq. Well, let me ask you this. Obviously, conditions have radically changed in Iraq since he left, obviously. True. How does that fit into this picture? It's not something that this Court is in a position to consider, because we're working, obviously, under an administrative record that was compiled before those changes took place, and the case has to be decided based on that record. Okay. I'll reserve the balance of my time. Okay. Thank you. Good morning. Hillel Smith on behalf of the government. This Court should affirm both of the Board's decisions, the first decision dismissing Mr. Al-Azawi's asylum appeal, as well as the Board's decision denying his motion to reopen under the deferential substantial evidence and abuse of discretion standards. Going to the first decision dismissing Mr. Al-Azawi's asylum appeal, in that decision, the Board specifically found that Mr. Al-Azawi was statutorily barred from asylum eligibility in the United States because he was firmly resettled in Germany for 18 years. I would note, and as this Court has noted up, the petitioner, Mr. Al-Azawi, does not address this dispositive finding in his brief to this Court and did not sufficiently raise it in his appeal to the Board, and has therefore waived it. And therefore, this Court does not, should not consider the issue of whether or not he was firmly resettled, because that issue has been waived. I couldn't. I didn't quite get that. I said that the issue of firm resettlement, whether or not he was firmly resettled in Germany, is not properly before this Court. Going to the issue of statutory eligibility, whether or not his firm resettlement bars him from seeking asylum in Germany, if you look at the statutory scheme, it does not specifically provide for an exception for the second country. It indicates that an alien who has been firmly resettled in a foreign country is not eligible for refugee status, and I'm looking at, I'm quoting Section 207.1 of the regulations. Any applicant who has become firmly resettled in a foreign country is not eligible for refugee status under this chapter. The Tenth Circuit, last year's decision of Destler v. Ashcroft, which was a firm resettlement case, stated that an alien is not entitled to asylum based on conditions in the alien's country of origin if the alien was firmly resettled in another country before arriving in the United States, and the Court noted that there is no ground for granting asylum from the second country. H.C.F.R. 207.1b, which deals with asylum eligibility, does not provide for such an exception for second countries. It would seem that this would be something that Congress would have to change. Counsel, why do you think, then, that the BIA assumed that the petitioner was eligible for asylum? Well, it's not uncommon for the board or immigration judges to make alternate findings. For example, if an applicant is time-barred because he or she did not apply for asylum within one year of his arrival, often in the decision, the immigration judge or the board will find the jurisdictional issue first, and then will say, well, even so, even assuming he's eligible, we'll go ahead and make this finding. They often do that as an alternate finding. Concerning the nationality issue, while there is an exception for asylum eligibility if you're a person who has no nationality outside of your country, in this case, I believe the – if you look at the record, I believe the – Mr. Al-Azawi conceded that he was an Iraqi citizen and national. I think that's in 171, and also on his brief on page 2, he did concede he was national. But putting this aside, the Court really does not need to resolve the issue of whether or not Mr. Al-Azawi can seek asylum from Germany, because, as this not necessary for the Court. There's no need to remand it just for that issue, because the board already decided the issue of his asylum eligibility. It would – it would be futile to remand it to the board just for that issue. And it wasn't properly addressed before this Court anyway. Now going to the board's first decision, dismissing his asylum appeal, in that case, the board's decision is substantially – is reasonable and supported by substantial evidence. The problem with this case is Mr. Al-Azawi presented a testimony that was vague and somewhat speculative. He are – he claimed that unidentified individuals whom he believed to be Iraqi nationals and possibly – well, he believed to be – them to be Iraqi agents of the Ba'ath Party. He claimed that they followed him, watched him, and harassed him. But this testimony alone just simply does not compel a reasonable fact-finder to conclude that he will be persecuted on account of his political beliefs. There's no evidence to establish the identity of these anonymous – anonymous individuals. There's no evidence to show that he was specifically harmed. There's no evidence to show that the German government or the police are unable and willing to protect him. He indicated that he went to the police. We have no evidence of a police report. There's – he claimed that the police – if you look at the testimony, it appears that the police requested more information about the individuals who supposedly harassed him. He claims that the police told him that they could not guarantee his protection. I would notice – note that there's a big difference between being unable to guarantee someone's protection and being unable or unwilling to protect someone. The fact that the police may not have been able to protect him or been able to pursue his case because they had insufficient information does not establish that the government is unable or unwilling to protect him. Counsel, I have one little problem with the bottom line. It may not even be in front of us. The BIA granted him withholding from Iraq, correct? That's correct, yes. So he cannot be – Let me finish. I'm sorry. It's closing order, however, says that if he fails to depart voluntarily, he shall be deported as provided in the immigration judge's order. The immigration judge's order says he shall be deported to Iraq. That is a – So if one's trying to figure out what the BIA did in the long run, I could say maybe nobody's raising that point in front of us, but perhaps you can tell me what's supposed to happen now if he didn't voluntarily depart and doesn't. If he did not voluntarily depart, then obviously he loses the privilege of voluntary departure. He cannot be deported to Iraq because he's granted withholding of deportation to Iraq. But the BIA says he shall be because he shall be deported as the IJ said, and the IJ says he shall be deported to Iraq. So what do we – is that something that you just let them work out and that's not frustrating? I would agree. I think that should be interpreted as meaning he can be deported to another country such as Germany, but he cannot be deported to Iraq. The board obviously knows that. They may have – they didn't specify, but it's not unusual for the board to provide that extra paragraph without providing more specific details what country he can or cannot be deported to. That's something that – but the board certainly does understand that he cannot be deported to Iraq. I would note in this case, going back to the asylum eligibility from Germany and withholding, he does not – Would he be eligible for withholding from Germany? He can apply – right, he can apply for withholding of deportation to Germany. Just not asylum? Well, again, looking at the statute, there does not appear to be an exception for second countries. That's something that if there is a glitch in the statute, in the asylum statute, that would be something that Congress would have to resolve and he didn't consider he was an Iraqi national. So in this case, but because the board went ahead and made that finding, that's why I'm addressing that issue because the board went ahead and made that finding. So let's just assume that he's eligible for asylum from Germany. In that case, he – in this case, there's no evidence. I would note that he lived in Germany for 18 years. He claimed that individuals whom he believed to be agents followed him and harassed him for periods of that time. There appears to be a gap within that period where he was not having problems. Based on his testimony, it appeared that he had problems initially when he moved there in 1972 and then he had problems again beginning in the 80s, late 80s. There's no evidence to show in the record that he would be harmed by these anonymous individuals 14 years after he left Germany and there's no evidence that he was harassed specifically because he worked for the United States military or because of his political beliefs. It's just not compelling evidence for this court to disturb the board's decision and going to the motion to reopen, I think it's important to stress while the fact that an alien presents new evidence does not demonstrate that a motion to reopen should be granted, and this court has recognized that a moving party in a motion to reopen must establish his prima facie eligibility for the relief being sought and this court has held that the board may deny a motion to reopen if the alien fails to establish his statutory eligibility for relief. In this case, the board properly concluded, given his firm resettlement and his inability to present persuasive evidence that he would be persecuted in Germany, he did not establish his prima facie eligibility for relief. So simply presenting new evidence in a motion to reopen case does not suffice. Unless this court has any other questions. Thank you very much. Thank you. Very briefly, I want to say that the regulatory provision that counsel referred to, 207.1, has no application to this case. The controlling regulation is 208.15. 207.1 relates to overseas refugee processing, not applications for asylum. And lastly, the issue about the concession, the only formal concession here is not about nationality. It's that you are a native of Iraq and a citizen of Iraq. That's what's alleged on page 277 in the notice to appear. And he is a native of Iraq and a citizen of Iraq. But at this point in time, we don't believe he is, as defined by the act, a national of Iraq. Counsel, you're saying that 8 CFR 208 has no application to this case? No, Your Honor. I'm saying 208.15 is the appropriate regulation, but 207.1 that counsel referred to has no application. All right. Thank you. Thank you, Your Honor. Thank you very much. We appreciate your argument. The matter will be submitted. Thank you. The next case on today's calendar is Tan v. Ashcroft.
judges: Fernandez, Paez, Rawlinson